# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DOUGLAS SANTOS-HERRERA, ) | |
| ) | **COMPLAINT** |
| Plaintiff, ) | |
| ) | |
| v. ) | **Jury Demand Endorsed Herein** |
| ) | |
| TRANS UNION, LLC, ) | |
| AND SELF-FINANCIAL, INC. ) | |
| ) | |
| Defendants. ) | |

COMES NOW Plaintiff, Douglas Santos-Herrera, by and through undersigned counsel, and for his Complaint against the Defendants, Trans Union, LLC and Self-Financial, Inc., he states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Douglas Santos-Herrera ("Plaintiff") is a natural person that resides in Saint Peters, Missouri.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Trans Union, LLC ("Trans Union") is a foreign limited liability company that regularly transacts business in Missouri through its registered agent, The Prentice-Hall Corporation, 221 Bolivar

Street, Jefferson City, MO, 65101.

5. Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6. Self-Financial, Inc. ("Self-Financial") is a for-profit lender offering various financial products to consumers across the nation.

7. Self-Financial is foreign corporation based in Austin, Texas that regularly transacts business in Missouri.

8. Self-Financial is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

10. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

11. In August 2020, Plaintiff opened a credit building account with Self-Financial.

12. However, like many Americans during this period, Plaintiff struggled with financial hardships and fell behind on the required payments.

13. Self-Financial closed the account and reporting it as charged off in March 2021.

14. In June 2021, after recovering financially, Plaintiff paid the remaining Self-Financial balance in full.

15. In November 2021, Plaintiff consulted with a mortgage lender about potentially purchasing a new home.

16. However, after a credit check was performed, his application for financing was denied.

17. Upon reviewing his credit reports with his lender, they identified the Self-Financial account as a key derogatory item that was anchoring down his score.

18. The issue was that the Self-Financial account was still reporting with an active and past due balance on his Trans Union credit file.

19. This inaccurate reporting misrepresented plaintiff's monthly payment obligations and the total debt owed by Plaintiff, both routinely viewed as key factors in financing decisions.

20. On or about January 6, 2022, assuming this was an accidental oversight, Plaintiff contacted Self-Financial but was told all credit reporting concerns would need to be addressed to the consumer reporting agencies.

21. Undeterred, Plaintiff contacted Trans Union by letter and requested they investigate and correct the inaccurate Self-Financial account balance information.

22. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, Trans Union was then required to reasonably investigate Plaintiff's disputes, as well as forward copies of Plaintiff's dispute letter to Self-Financial.

23. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, Self-Financial was also obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

24. However, after approximately 45 days, Plaintiff still had not received any response from Trans Union or Self-Financial.

25. On or about February 11, 2022, Plaintiff obtained another copy of his credit report and confirmed that the account was still showing an active balance.

26. In fact, the credit report did not reflect any indication that Trans Union had even investigated Plaintiff's disputes – no comments or other notes on the Self-Financial account reflecting the account as "disputed" or in a dispute status.

27. Plaintiff was beyond angry. He had paid as required and deserved the benefit on his credit report. Why was Self-Financial failing to update the account? Why was Trans Union allowing the inaccurate information to remain on her report? Why was no one responding?

28. Wanting to stay vigilant about making sure this negative information was removed from his credit history, Plaintiff sent another letter to Trans Union on February 21, 2022, again disputing the inaccurate information listed on the Self-Financial account.

29. Confusingly, on or about March 27, 2022, Plaintiff received a response from Trans Union confirming that the balance was accurate on the Self-Financial account.

30. Plaintiff did not understand this response – both Equifax and Experian were accurately reporting the account as closed and paid. Why was Trans Union's investigation suggesting the opposite? Why was this simple issue remaining unresolved?

31. After contacting Self-Financial and Trans Union repeatedly to fix this issue to no avail, Plaintiff is at a loss as to how to follow, let alone combat, Trans Union's logic in allowing this evidently inaccurate credit information to remain on his credit report.

32. Trans Union has complete control over the credit picture they paint of Plaintiff, yet it refuses to correct an objectively false error. Plaintiff feels helpless and hopeless as to what else he can do.

33. Plaintiff fears that he will not be able to obtain an accurate credit report, and so, will continue to be denied his chance to buy a new home, or take advantage of any of countless other credit opportunities he should otherwise be eligible for. This has imposed upon Plaintiff great sadness and frustration, as well as anger and disgust.

34. Plaintiff has lost all trust in the credit reporting system and believes that litigation is his only option to fix his credit report.

## FIRST CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union**

35. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

36. A "consumer reporting agency" is defined by the FCRA as follows:

37. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

38. Trans Union is a "consumer reporting agency" as defined by the FCRA.

39. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

40. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

41. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed

5

by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

42. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

### Trans Union's Reasonable Reinvestigation Violations

43. By letters dated January 6, 2022, and February 21, 2022, Plaintiff disputed the false information listed by Self-Financial on his Trans Union credit report.

44. Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade lines be deleted or updated accordingly.

45. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

46. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

47. As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

48. As a direct and proximate result of Trans Union's willful and/or negligent refusal to delete false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such

as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

49. Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

50. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Trans Union's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

51. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

52. On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

53. Despite actual and implied knowledge that the Self-Financial account was reporting inaccurate information, Trans Union readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Trans Union reported.

54. On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

55. Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

56. Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

57. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

58. Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

59. Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by

circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Trans Union, and for the following relief:

(a)   Actual damages sustained;

(b)   Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)   Punitive damages in an amount to be determined by the jury;

(d)   Reasonable attorneys' fees and costs; and

(e)   Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by Self-Financial

67.   Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

68.   Self-Financial is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

69.   Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to the consumer reporting agencies as to the accuracy of information reported about them by the furnisher.

70.   On at least two (2) occasions, namely January 6, 2022, and February 21, 2022, Plaintiff contacted Trans Union specifically to dispute the accuracy of the Self-Financial account.

71.   Plaintiff specifically advised Trans Union on each occasion that the information being reported was false, provided all necessary information to support his disputes, and requested the false

9

information be deleted accordingly.

72. Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Self-Financial received notification of these disputes from Trans Union.

73. Nevertheless, the inaccurate Self-Financial account information was allowed to remain on Plaintiff's credit report under the guise that Self-Financial had "verified" the information as true.

74. Either Self-Financial conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow information known to be false and highly damaging to remain in Plaintiff's credit file.

75. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Self-Financial negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

76. As a direct and proximate result of Self-Financial's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling him to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

77. Self-Financial's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Self-Financial, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Self-Financial, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,

**/s/. Andrew M. Esselman**
Andrew M. Esselman #64837
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
Telephone: 816-246-7800
Facsimile: 855-523-6884
Email: andrewe@creditlawcenter.com
Counsel for Plaintiff

11